## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LOUIS ALLIS, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 23- |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| IDEAL ELECTRIC POWER CO. (D/B/A | ) | |
| THE IDEAL ELECTRIC COMPANY) AND | ) | |
| GULF ELECTROQUIP, LTD, | ) | |
| | ) | |
| Defendants. | | |

## <u>COMPLAINT</u>

Plaintiff Louis Allis, LLC ("Louis Allis") alleges upon knowledge as to itself and its own acts and upon information and belief as to all other matters:

### I.     NATURE OF THE ACTION

1.     This is an action for trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1); unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and a declaration of rights under the Declaratory Judgment Act, 28 U.S.C. § 2201.

2.     Louis Allis and its predecessors have been in the electric motor business for more than a hundred years, and have produced more than two million motors.  It has invested substantial time, money, and effort in building its brand and reputation, and owns two federally registered trademarks relating to electric motors – the brand name **LOUIS ALLIS** and the stylized LA logo:

LOUIS ALLIS 

3.      Louis Allis has used both trademarks continuously for many years, and the market strongly associates both marks with Louis Allis and the motors and motor repair services offered by Louis Allis.

4.      In the last few weeks, Defendant Ideal Electric Power Co., which does business as The Ideal Electric Company ("Ideal"), started marketing and selling its electrical motors – the same type of product that Louis Allis sells – under the identical LOUIS ALLIS trademark and logo.  This is a blatant violation of Louis Allis's federally registered and protected LOUIS ALLIS trademarks.  Indeed, Ideal is using both the name LOUIS ALLIS and the stylized LA logo on its motors, website, and promotional materials, and passing off LOUIS ALLIS and "The Louis Allis Company" as an "Ideal Electric business":



Ideal also put out a press release claiming to have "acquired" the "intellectual property of Louis Allis Large Synchronous Machines and Louis Allis Induction Motors, product lines of the former Louis Allis Company...."

5.      Not surprisingly, Louis Allis's customers are confused, not knowing who the real source is for the Louis Allis motors that they know and trust.  Some have wondered whether Louis Allis has sold it business.

6.      Ideal's affiliated company, Gulf Electroquip, Ltd. ("Gulf"), structured these arrangements, put Ideal in business, purported to give Ideal rights to the LOUIS ALLIS name and marks, is touting the connection between Ideal and the LOUIS ALLIS brand, and is profiting from

Ideal's misuse of the LOUIS ALLIS trademarks.  Indeed, Jim Petersen Jr., the President/Owner of both Gulf and Ideal, has press releases and other articles about Ideal's use of the LOUIS ALLIS marks and supposed ownership of the Louis Allis business on his LinkedIn profile further publicizing the supposed connection between Ideal and Louis Allis.

7.      This situation is untenable.  Two business cannot be selling the same type of products under the same brand name and using the same corporate logo.  Louis Allis owns the trademark rights and Ideal does not.

8.      By this action, Louis Allis seeks preliminary and permanent injunctive relief to stop Ideal and Gulf from using the LOUIS ALLIS marks or passing themselves off as Louis Allis, as well as monetary damages and declaratory relief.

## II.      THE PARTIES

9.      Plaintiff Louis Allis is a Delaware limited liability company with its principal place of business in Warrior, Alabama.

10.      Defendant Ideal is a Delaware corporation with its principal place of business in Houston, Texas.

11.      Defendant Gulf is a Texas limited partnership with its principal place of business in Houston, Texas.

## III.      JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

13.      This Court has personal jurisdiction over Ideal pursuant to Section 321 of the Delaware General Corporation Law because it is a Delaware corporation and can be served with process within the state.

14.     This Court has personal jurisdiction over Gulf pursuant to the Delaware Long-Arm Statute, 10 *Del. C.* § 3104, because Gulf transacted business within Delaware and/or committed tortious acts within Delaware through its agent, Ideal.  Specifically, Gulf and its owners/executives devised the strategy for Ideal, their Delaware entity, to use the LOUIS ALLIS marks, purported to convey those rights to that Delaware entity, are controlling the Delaware entity's use of the marks, and are profiting from the misuse of the marks that Gulf and its owners/executives planned for their Delaware entity to exploit.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) or (3) because Ideal, as a Delaware corporation, resides in this District and is subject to this Court's personal jurisdiction and because the intangible intellectual property rights at issue are situated in Delaware since they are the subject of competing claims by two Delaware entities – Louis Allis and Ideal.

## IV.     FACTUAL BACKGROUND

### A.     Louis Allis Is a Market Leader in the Electric Motor Industry and Owns Registered Trademarks for its Name and Logo

16.     Originally founded by Mr. Louis Allis in 1901 as The Mechanical Appliance Company, Louis Allis is a leading industrial motor company that focuses on electric motor manufacturing and repair services for large and specialty applications.  The company changed its name to The Louis Allis Company in 1922.  Over the last century, Louis Allis has produced more than two million electric motors, which is more than any other manufacturer in the United States.

17.     As reflected in old advertisements reprinted in the company history section of the Louis Allis website – www.louisallis.com – Louis Allis has been selling and promoting its motors using both the Louis Allis name and mark and the stylized LA logo across many decades:







18.    Louis Allis has historically (and continues to) sell electric motors of all sizes to industrial customers across many different industries, including for specialized and demanding applications.

19.    Louis Allis is the holder of two registered trademarks relating to its name and logo. The trademark for the name **LOUIS ALLIS** was issued by the United Stated Patent and Trademark

Office (the "PTO") on February 7, 2017 under registration number 5135589 covering electric motors and the repair or maintenance of electric motors. The trademark for Louis Allis's stylized LA logo was issued by the PTO on August 21, 2001 under registration number 2479662 covering electric motors and replacement parts. Copies of the PTO website pages for these trademarks, which reflect that both the LOUIS ALLIS name and logo are owned by Louis Allis, are attached to this Complaint as Exhibits A and B.

20.     On August 22, 2023, the PTO issued, for each trademark, a Notice of Acknowledgement under Section 15 of the Lanham Act that recognized the trademark as incontestable. Copies of these Notices of Acknowledgment are attached to this Complaint as Exhibits C and D.

21.     A picture of the Louis Allis logo, which is registered without regard to color, is shown below:



22.     In addition to these current trademarks, Louis Allis's predecessors also have historically owned a number of other trademarks relating to the LOUIS ALLIS brand. For example, the trademark for the name LOUIS ALLIS was registered by The Louis Allis Company and issued by the PTO on April 7, 1953 under registration number 0572885 covering electric motors. The PTO website for that mark reflects that the LOUIS ALLIS name was first used in commerce in 1922. A copy of the PTO website for this trademark is attached to this complaint as Exhibit E.

23.     As a market leader in the electric motor industry with decades of experience, Louis Allis's customers strongly associate its LOUIS ALLIS name and logo with the Louis Allis company.

**B.     Louis Allis Learns of Ideal's Infringement of its Trademarked Name and Logo**

24.     During the week of June 26, 2023, representatives of Louis Allis and its affiliated company, Worldwide Electric Corporation, LLC ("Worldwide Electric"), attended the 2023 annual convention in National Harbor, Maryland held by the Electrical Apparatus Service Association (EASA), an international trade organization of more than 1,700 electromechanical sales and service firms (the "EASA Convention").  The EASA Convention is an annual industry event where companies involved in the sale and service of electric motors and other rotating machinery can market their products and services and mingle with both customers and others in the industry.

25.     At the EASA Convention, representatives of Louis Allis observed that Ideal was displaying the LOUIS ALLIS name and logo in its exhibition booth.

26.     Shocked, representatives of Louis Allis asked a representative of Ideal why it was displaying the LOUIS ALLIS name and logo.  The representative of Ideal stated, in substance, that Ideal had purchased certain rights to use the LOUIS ALLIS name and logo from NOV Inc. ("NOV"), a provider of equipment used in oil and gas production.

27.     The representatives of Louis Allis were completely baffled.  They had never heard of any such arrangement.  To their knowledge, Louis Allis had exclusively used the LOUIS ALLIS name and logo to market LOUIS ALLIS electric motors of all sizes for many decades.

28.     Soon after, Louis Allis also learned that Ideal had issued a press release on June 26, 2023 (which was subsequently updated and re-issued on June 30, 2023) with the headline "IDEAL

ELECTRIC COMPANY ACQUIRES LOUIS ALLIS COMPANY, BELOIT POWER SYSTEMS & COLT INDUSTRIES LARGE MOTOR AND GENERATOR IP PORTFOLIO."  The press release stated that Ideal "announced today the acquisition of the tangible and intangible personal property and certain intellectual property of Louis Allis Large Synchronous Machines and Louis Allis Large Induction Motors, product lines of the former Louis Allis Company.... IDEAL's acquisition provides Louis Allis Company's large motors and generators customers – and the customers of its other legacy brands – with continued service and production of new machines (new designs, replacements, and spares), factory-engineered upgrades, parts, field services, and support."  A copy of the press release is attached to this Complaint as Exhibit F.

29.    The press release further stated that the acquired "IP includes the right to engineer, design, manufacture, sell and market all Louis Allis Induction Motors above 950 horsepower (HP) including Louis Allis Large Synchronous Machines and Louis Allis Large Induction Motors and the right to use the names 'Louis Allis Company,' 'Louis Allis Large Motor,' 'Louis Allis Large Motor Corporation,' and the Louis Allis stylized logo."

30.    Ideal distributed hard copies of the press release at the EASA Convention and also posted the press release on its website, on a new page expressly dedicated to Louis Allis, and that web page further suggests that Ideal owns the Louis Allis business: https://www.theidealelectric.com/louis-allis/.  The web page opens with a huge banner touting Louis Allis as an "IDEAL ELECTRIC business":



 

The web page then includes a detailed "History of the Louis Allis Company" and heralds that "TODAY, Louis Allis large motors and machines are in solid hands with IDEAL, a company that cares and has all of the resources to support you, the Louis Allis customer." It also trumpets that Louis Allis and Ideal are a "perfect match" because "Louis Allis built machines much like IDEAL builds machines, allowing us to further expand and support our customers." And it refers to Louis Allis motors "today" being "under the IDEAL ELECTRIC umbrella." In other words, Ideal is touting Louis Allis as its own brand and own business – which is false.

31.     Equally deceptively, Ideal's "Louis Allis" page on its website displays historical photos of large motors, including this one that bears the metadata legend (apparent if you hover over the photo on the web page) "Legacy Photo w Logo Footer – Louis Allis 01-01."



By displaying a historical photo of what it holds out to be a Louis Allis motor (which Ideal did not manufacture) and adding Ideal's name and the LOUIS ALLIS trademarks at the bottom, Ideal is seeking to create a further false linkage between itself and the historical Louis Allis business – again, trading on Louis Allis's reputation, investment, and hard work.

32.    Ideal also publicized its purported acquisition of Louis Allis on social media, including in posts on LinkedIn.  One post highlighted that "The EASA 2023 National Convention was an event to remember.... We had numerous insightful conversations, made significant connections, and **announced the acquisition of Louis Allis Large Motors and Generators**

portfolio" and promoted as "BREAKING NEWS" the *"Ideal acquisition" of "The Louis Allis Company Large Synchronous Motors and Large Induction Motors."*  Another proclaimed that "[t]his is a very special 4th of July for us as *Ideal has acquired the Louis Allis Company.*"  A third detailed the history of Louis Allis and boasted that "Today IDEAL ELECTRIC is proud to be part of this incredible journey, honoring the past while paving the way for a bright and sustained future for Louis Allis."  Copies of these items on Ideal's LinkedIn page are attached to this Complaint as Exhibit G.

33.    Ideal similarly promotes its supposed ownership and control of Louis Allis on Facebook.  A July 30, 2023 posting on Ideal's Facebook page again summarizes Louis Allis's corporate history and repeats the language that "Today, IDEAL ELECTRIC is proud to be part of this incredible journey, honoring the past while paving the way for a bright and sustained future for Louis Allis.  Learn more about IDEAL's acquisition of Louis Allis motors and generators: https://bit.ly/3OxJQ0j."  That link takes the reader to the Louis Allis page on Ideal's website.  A copy of the Facebook posting is attached to this Complaint as Exhibit H.

34.    Making matters worse, someone looking for Louis Allis motors does not even have to be aware of Ideal's social media postings.  A simple Google search for "Louis Allis" brings up first, a link to Louis Allis's own web page but just a few entries down, displays "Louis Allis – THE IDEAL ELECTRIC COMPANY," with a link to Ideal's Louis Allis page.  A copy of the results of this Google search is attached to this Complaint as Exhibit I.

35.    These numerous market references associating the LOUIS ALLIS marks and Louis Allis's business with Ideal are inherently confusing with Louis Allis's ownership of the trademarks to its own name and logo.

**C.**     **Louis Allis Investigates, and Ideal Asserts Rights to the Louis Allis Trademarks**

36.     Following the EASA Convention, Louis Allis immediately commenced an investigation into Ideal's claims, including speaking with Ideal and Gulf and their counsel to try to understand the basis for their claims.  During that call, Ideal's and Gulf's counsel reiterated their position that Ideal owns rights to the LOUIS ALLIS name and logo.  Ideal's and Gulf's counsel also offered to provide Worldwide Electric and Louis Allis with copies of the agreements by which Ideal and Gulf purportedly purchased those rights from NOV.

37.     On July 17, 2023, Ideal's and Gulf's counsel sent Louis Allis's counsel copies of two agreements that they claim gave them rights to the marks.  These agreements, however, do no such thing.

38.     The first agreement is an Asset Purchase Agreement between National-Oilwell, L.P. ("National Oilwell") (a predecessor to NOV), Alliance Specialty Motors, Inc. ("Alliance") (the predecessor to Louis Allis), and Bruce and Roberta Bailey (the "Baileys") (the now-former owners and operators of Alliance), dated April 29, 2004 (the "2004 APA").  A copy of the 2004 APA is attached to this Complaint as Exhibit J.

39.     The 2004 APA largely sold equipment to National Oilwell, as well as drawings, files, designs, materials lists, and manufacturing standards manuals, but under Section 7.6 of the agreement, Alliance and the Baileys also granted National Oilwell an "irrevocable, perpetual, exclusive, worldwide, royalty-free license and right to use the names 'Louis Allis Company' and 'Louis Allis Large Motor' and the Louis Allis logo" in connection with "engineering, designing, manufacturing, selling, marketing, and servicing of A.C. Induction motors above and including N449 frame size and any associated parts and components."  Schedule 2.1 to the 2004 APA similarly granted NOV "rights to use the name of 'Louis Allis Large Motor Corporation' ... [and]

12

'Louis Allis Company' and 'Louis Allis Large Motor' in the Business [sold] and [the defined] Products," while Alliance retained the right to use the LOUIS ALLIS name and logo for small motors.

40.     Importantly, Section 8.10 of the 2004 APA provides that the parties to that agreement (*i.e.*, National Oilwell, Alliance, and the Baileys) "shall not assign their rights and obligations under this Agreement without the prior written consent of the other Parties...."  Thus, regardless of what rights National Oilwell/NOV may have received pursuant to the 2004 APA, NOV was prohibited from assigning any rights under that agreement to anyone else without the consent of Alliance (now Louis Allis).  Alliance/Louis Allis never provided any such consent.  Thus, Ideal could not validly have been assigned any of NOV's rights under the 2004 APA.

41.     Furthermore, to the best of Louis Allis's knowledge, National Oilwell/NOV never used the LOUIS ALLIS name, mark, or logo for electric motors of any size.  There is no market evidence of such use.  Louis Allis personnel who worked in the industry for decades also never saw any indication of any use by NOV of the marks.  Moreover, Alliance (now Louis Allis) continued selling LOUIS ALLIS-branded motors of all sizes – including large motors – at all times after 2004, just as it had done before 2004.

42.     The second agreement Ideal and Gulf provided is a "Bill of Sale and Assignment" between NOV and Gulf dated December 21, 2021 (the "2021 Bill of Sale") pursuant to which NOV conveyed certain assets to Gulf.  A copy of the 2021 Bill of Sale is attached to this Complaint as Exhibit K.

43.     The 2021 Bill of Sale, however, does not purport to assign any rights to the LOUIS ALLIS name, mark, or logo.  Exhibit A to the 2021 Bill of Sale, which sets forth the assets to be transferred, does not contain any references to the LOUIS ALLIS name, trademark, or logo.  To

the contrary, it specifically states that the assets are just the "*movable* assets set forth in Exhibit A." Exhibit A in turn says that it is only conveying "unregistered intellectual property rights," and enumerates engineering drawings, design files, the contents of physical filing cabinets, bills of material and the like, and goes on specifically to provide that the assets to be transferred "***do not include any trademarks, whether registered or unregistered.***"

### D.    Ideal Has No Rights to Use the Louis Allis Name or Logo

44.    Ideal's position that NOV acquired rights to Louis Allis's LOUIS ALLIS name and logo through the 2004 APA, that NOV later transferred those rights to Gulf pursuant to the 2021 Bill of Sale, and that Gulf in turn explicitly or implicitly assigned or licensed the rights to Ideal, is simply wrong. NOV had no ability under the 2004 APA to make any such assignment. And the 2021 Bill of Sale to Gulf is equally clear that it did not even purport to make such an assignment, but instead expressly warned that it was NOT conveying any trademark rights.

45.    As detailed above, the 2021 Bill of Sale from NOV to Gulf does not even purport to convey rights to use the LOUIS ALLIS name and logo, but instead says the opposite and expressly disclaims the conveyance of any trademarks. Therefore, the 2021 Bill of Sale did not transfer any rights that NOV had to the Louis Allis name or logo to Gulf. Any subsequent purported conveyance of those rights from Gulf to Ideal (by assignment, license, or otherwise) is ineffective.

46.    Moreover, even if the 2021 Bill of Sale did purport to convey trademark rights to Gulf (which it did not), such a transfer would have been invalid and ineffective because the 2004 APA expressly provides that the parties to that agreement shall not assign their rights under the agreement without the prior written consent of the other parties. Alliance (now Louis Allis) never consented to the assignment of any rights under the 2004 APA from NOV to any other person

(much less any downstream further conveyance from Gulf to Ideal). Therefore, NOV could not have validly conveyed to Gulf (or Ideal) any trademark usage rights that it may have had under the 2004 APA.

47.     In addition, NOV's failure to use its purported trademark rights for over 17 years constitutes abandonment of those rights in any event, since trademark rights depend upon usage. Only Louis Allis has used the LOUIS ALLIS marks continuously – and for many decades.

### E.     Gulf Actively Participates in the Infringement

48.     Gulf is no mere bystander to Ideal's infringement, but a driving force. As noted above, Gulf and Ideal are under common ownership and control. The owners of Gulf bought the Ideal business as part of a years-long plan to create a new platform for the sale of electric motors. It is Gulf that (incorrectly) claims to have acquired rights to the LOUIS ALLIS marks in furtherance of that plan. And for Ideal to in turn claim any rights, Gulf necessarily must have assigned or licensed to Ideal whatever rights Gulf received from NOV.

49.     The transfer to its affiliate Ideal of Gulf's supposed rights to the LOUIS ALLIS marks was a critical component of its business plan.

50.     And Gulf and its owners and executives are seeking to reap profits for themselves from Ideal's misuse of the LOUIS ALLIS marks.

### F.     Louis Allis Notifies Ideal and Gulf of their Infringement

51.     Promptly after receiving and analyzing the 2004 APA and the 2021 Bill of Sale, Louis Allis and its counsel repeatedly contacted Ideal and Gulf and their counsel to try to explain why Ideal did not actually possess any rights to use the LOUIS ALLIS mark or logo. In late July and early August 2023, Louis Allis's counsel emailed Ideal's and Gulf's counsel three times to schedule a discussion, explaining in one email that "[w]e appreciate the constructive tone to date

by all sides, but we don't believe that Ideal has the rights that you think it does to use the Louis Allis name and logo.  We should obviously discuss."

52.     Ideal and Gulf failed to timely respond to this outreach, and when they did, they declined to engage substantively on the merits of the matter.

53.     To avoid any possible misunderstanding, on August 14, 2023, Louis Allis's counsel sent Ideal's and Gulf's counsel a detailed letter explaining the reasons set forth above regarding why neither Gulf nor Ideal actually acquired the rights to use the LOUIS ALLIS name or logo, and asking counsel to be sure to share that analysis with his client.  A copy of Louis Allis's August 14, 2023 letter is attached to this complaint as Exhibit L.

54.     There has been no response from Ideal or Gulf or their counsel.  Instead, Ideal has continued to market and sell its products using the LOUIS ALLIS marks, and continued to pass off its motors as coming from Louis Allis.

**G.     Ideal's and Gulf's Actions Have Caused and Will Continue to Cause Extensive Harm to Louis Allis**

55.     The longer Ideal continues to use the LOUIS ALLIS marks to promote its motors as coming from Louis Allis, the more confusion it is creating and will continue to create in the marketplace.  There are two companies selling competitive motors under an identical brand name and logo.  This is a prescription for confusion and the epitome of trademark infringement.  Louis Allis has already received several inquiries in just the last few weeks from its customers wondering why Ideal is claiming to sell LOUIS ALLIS motors, with some customers asking if Louis Allis has perhaps sold its business to Ideal.

56.     Moreover, as recently as last Wednesday, August 30, 2023, a "Sales Manager at IDEAL Electric Company" named John Baumann added a comment to a recent Louis Allis post on LinkedIn highlighting a significant repair to a motor for a large concrete plant that Louis Allis

had performed, writing "What Louis Allis did this repair, Ideal?"  While Mr. Baumann appears to have subsequently deleted this LinkedIn comment, it shows that Ideal and its personnel are sowing confusion and trying to take credit for Louis Allis's accomplishments.

57.     This market confusion is disruptive to Louis Allis's business, creates uncertainty with its customers, and dilutes the value of the LOUIS ALLIS brand as a source identifier with a well-known reputation for quality, service, and value.

### COUNT I
### (Trademark Infringement Against Ideal)
### 15 U.S.C. § 1114(1)

58.     Louis Allis realleges and incorporates by reference the allegations in paragraphs 1–57 above as if fully set forth herein.

59.     Louis Allis owns exclusive rights in the registered United States trademarks for the name "LOUIS ALLIS," registration number 5135589, and for the LA stylized logo, registration number 2479662.  Both trademarks have been recognized as incontestable under Section 15 of the Lanham Act.

60.     Ideal is using, without Louis Allis's authorization, Louis Allis's trademarks in the sale, offering for sale, distribution, and/or advertising of goods and services in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

61.     Ideal's use of Louis Allis's registered trademarks on or in connection with such goods and services has caused and is likely to cause confusion, to cause mistake, or to deceive, and constitutes trademark infringement.

62.     On information and belief, including the fact that Ideal's conduct continued even after Louis Allis explained under the controlling documents why Ideal has no rights to the LOUIS ALLIS marks, Ideal's infringement is willful and done with full knowledge of and in conscious

disregard of Louis Allis's rights and with the intent to trade off of Louis Allis's goodwill in its registered trademarks and its business reputation.

63.     Ideal also knew that it had no rights to the LOUIS ALLIS name and logo under the 2004 APA based on the express anti-assignment language of that agreement, and further that it and Gulf acquired no trademark rights from NOV under the 2021 Bill of Sale because of the express statement in that agreement that no trademark rights were being conveyed.

64.     As a direct and proximate result of Ideal's wrongful conduct, Louis Allis has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law.  Unless enjoined, Ideal will continue to engage in these unlawful acts, which deceive the consuming public and irreparably injure Louis Allis.

65.     Louis Allis will also continue to suffer financial harm, up to and including impairment to the value and goodwill of its business, which is literally synonymous with the marks being used by Ideal.

## COUNT II
### (Contributory Trademark Infringement Against Gulf)
### 15 U.S.C. § 1114(1)

66.     Louis Allis realleges and incorporates by reference the allegations in paragraphs 1–65 above as if fully set forth herein.

67.     Ideal's use, without Louis Allis's authorization, of Louis Allis's trademarks in the sale, offering for sale, distribution, and/or advertising of goods and services infringes Louis Allis's federally registered trademarks for its name and logo is in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1).

68.     Gulf has allowed, facilitated, promoted and encouraged Ideal's infringement of Louis Allis's trademarks – indeed, it devised an entire business strategy for Gulf and its owners to

profit by having Ideal trade on the LOUIS ALLIS marks. What is more, Gulf has the right and/or ability to control Ideal's use of the marks, and even to stop the infringement entirely, but has chosen not to so that Gulf and its owners can continue to profit from the infringement.

69.     On information and belief, including the fact that Gulf's and Ideal's conduct continued even after Louis Allis explained under the controlling documents why Gulf and Ideal have no rights to the LOUIS ALLIS marks, Gulf's acts of contributory infringement have been willful and done with full knowledge of and in conscious disregard of Louis Allis's rights and with the intent to trade on Louis Allis's goodwill in its registered trademarks and its business reputation.

70.     Gulf also knew that it had no rights to the LOUIS ALLIS name and logo under the 2004 APA based on the express anti-assignment language of that agreement, and further that it acquired no trademark rights from NOV under the 2021 Bill of Sale because of the express statement in that agreement that no trademark rights were being conveyed.

71.     As a direct and proximate result of Gulf's wrongful conduct, Louis Allis has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law. Unless enjoined, Gulf will continue to help Ideal engage in these unlawful acts which deceive the consuming public and irreparably injure Louis Allis.

72.     Louis Allis will also continue to suffer financial harm, up to and including impairment to the value and goodwill of its business, which is literally synonymous with the marks being used by Ideal.

### COUNT III
### (Unfair Competition Against Ideal and Gulf)
### 15 U.S.C. § 1125(a)

73.     Louis Allis realleges and incorporates by reference the allegations in paragraphs 1–72 above as if fully set forth herein.

74.     Consumers are likely to be confused as to the source of Ideal's LOUIS ALLIS-branded motors, and even as to the ownership and status of Louis Allis's business itself, since they have come to associate the Louis Allis name and the LOUIS ALLIS trademarks (name and logo) with Louis Allis, LLC.

75.     Ideal's and Gulf's activities in falsely representing Ideal as the provider of LOUIS ALLIS-branded motors, and indeed as the new "umbrella" for the Louis Allis company, as well as that Louis Allis is now supposedly an "Ideal Electric business," constitutes falsely passing off their goods and services as the goods and services of Louis Allis.  By their use of Louis Allis's name and logo, Ideal and Gulf have falsely described or represented the origin of their goods and services in connection with the sale, offering for sale, distribution, and/or advertising of their goods and services in interstate commerce.  Ideal's and Gulf's actions have caused and/or are likely to cause confusion, deception, or mistake as to the true origin, source, sponsorship, or affiliation of Ideal's properties and services, and as to the nature, characteristics, or qualities of its properties and services, and have injured and are likely to further injure Louis Allis, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

76.     As a direct and proximate result of Ideal's and Gulf's wrongful conduct, Louis Allis has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law.  Unless enjoined, Ideal will continue to engage, and Gulf will continue to help Ideal engage, in these unlawful acts which deceive the consuming public and irreparably injure Louis Allis.

77.     Louis Allis will also continue to suffer financial harm, up to and including impairment to the value and goodwill of its business, which is literally synonymous with the marks being used by Ideal and Gulf.

## COUNT IV
### (Declaratory Judgment Against Ideal and Gulf)
### 28 U.S.C. § 2201(a)

78.     Louis Allis realleges and incorporate by reference the allegations in paragraphs 1–77 above as if fully set forth herein.

79.     A ripe and justiciable controversy between exists between Louis Allis and Ideal and Gulf regarding the ownership and right to use the LOUIS ALLIS trademarks on large motors.

80.     Louis Allis is the valid holder of registered trademarks relating to its name and logo. The trademark for the name "**LOUIS ALLIS**," registration number 5135589, was issued on February 7, 2017, and the trademark for Louis Allis's stylized LA logo, registration number 2479662, was issued on August 21, 2001. Both trademarks have been recognized as incontestable under Section 15 of the Lanham Act.

81.     For the reasons described above, neither the 2004 APA nor the 2021 Bill of Sale granted any valid rights to Gulf or Ideal to use the LOUIS ALLIS marks. Therefore, neither Gulf nor Ideal is allowed to use the LOUIS ALLIS marks – neither the name nor the logo.

82.     Accordingly, a judicial declaration is reasonable, necessary, and appropriate in this action to resolve this controversy. Louis Allis has no adequate remedy at law. Only through the exercise of this Court's equitable power can Louis Allis be protected from the continuing, immediate, and irreparable injury caused by Ideal's and Gulf's infringement of its trademarks.

83.     By reason of the foregoing, pursuant to 28 U.S.C. § 2201(a), Louis Allis is entitled to a judgment declaring that neither Ideal nor Gulf have any rights to or interests in the LOUIS ALLIS name and logo.

### V.     PRAYER FOR RELIEF

WHEREFORE, Louis Allis respectfully requests that the Court enter judgment:

A.      Preliminarily and permanently enjoining Ideal and Gulf from using, displaying or authorizing others to use or display the LOUIS ALLIS trademarks (including the LOUIS ALLIS name and stylized LA logo) or anything confusingly similar to either of them as a tradename, corporate or other entity name, trademark, service mark, or domain name or in the sale, offering for sale, servicing, advertising, promotion, or distribution of any electrical motors by electronic or any other means;

B.      Preliminarily and permanently enjoining Ideal and Gulf from selling any goods or services bearing the LOUIS ALLIS or stylized LA logo trademarks;

C.      Preliminarily and permanently enjoining Ideal and Gulf from committing any acts calculated to cause consumers to believe that Ideal's products or services are sold under the authorization, control, or supervision of Louis Allis, or are sponsored or approved by, or otherwise connected with, Louis Allis or any of its predecessor companies;

D.      Preliminarily and permanently enjoining Ideal and Gulf from operating, hosting, posting, promoting or publishing in any manner on its website(s), website pages, internet search engines, or social media platforms (including, without limitation, Twitter, LinkedIn, Facebook, Instagram, and TikTok), and must remove from the same, any reference to or use of the LOUIS ALLIS or stylized LA logo trademarks, including but not limited to removing the following page from Ideal's corporate website:  https://www.theidealelectric.com/louis-allis/;

E.      Preliminarily and permanently enjoining Ideal and Gulf from further infringing the LOUIS ALLIS trademarks (including the LOUIS ALLIS name and stylized LA logo) and damaging Louis Allis's goodwill;

F.      Declaring that neither Ideal nor Gulf have any rights to use or display the LOUIS ALLIS marks (including the name and logo) or any confusingly similar name or mark in any fashion;

G.      Awarding Louis Allis monetary damages in an amount to be determined at trial, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

H.      Declaring this case to be exceptional pursuant to 15 U.S.C. § 1117(a) and awarding costs, expenses, and attorneys' fees to Louis Allis; and

I.      Awarding Louis Allis such other and further relief as the Court deems just and proper.

## VI.      JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Louis Allis demands a jury trial as to all matters so triable.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Peter L. Simmons
Joshua D. Roth
Harrison D. Polans
Nicholas D. Winkley
FRIED, FRANK, HARRIS, SHRIVER
    & JACOBSON LLP
One New York Plaza
New York, NY 10004
Tel:  (212) 859-8000

By:   */s/ David E. Moore*
      David E. Moore (#3983)
      Jonathan A. Choa (#5319)
      Andrew M. Moshos (#6685)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE  19801
      Tel:  (302) 984-6000
      dmoore@potteranderson.com
      jchoa@potteranderson.com
      amoshos@potteranderson.com

Dated:  September 6, 2023
11034992/23410.00001

*Attorneys for Plaintiff Louis Allis, LLC*